UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| JANE DOE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 19-cv-5275 |
| | : | |
| TRIANGLE DOUGHNUTS, LLC, | : | |
| Defendant. | : | |

**O P I N I O N**
*Sua sponte* **grant of conditional leave to proceed anonymously**

**Joseph F. Leeson, Jr.**                                                                                                  **June 23, 2020**
**United States District Judge**

I.  **INTRODUCTION**

This case is an employment discrimination action in which Plaintiff, who worked as a Cashier at Dunkin' Donuts, alleges that she was subject to a hostile work environment, harassment, and eventually termination by Defendant, Triangle Doughnuts, LLC ("Defendant" or "Triangle Doughnuts").[1] *See generally* Am. Compl., ECF No. 12. Plaintiff further alleges that her mistreatment by Defendant occurred as a result of her sex and gender identity. *Id.*

Though Plaintiff had previously filed two motions for leave to prosecute her lawsuit anonymously under the pseudonym "Jane Doe" rather than her true name, the "gavels" associated with those motions on ECF were extinguished. The Court has not yet determined

---

[1]  Plaintiff's complaint initially included claims against Defendant, Triangle Doughnuts, and a second defendant, Dunkin' Donuts Franchising LLC ("Dunkin' Donuts"). However, on March 3, 2020, the parties filed a stipulation dismissing without prejudice all claims asserted against Dunkin' Donuts. *See* ECF No. 22.

whether Plaintiff is legally entitled to proceed in this capacity, and therefore issues this *sua sponte* decision.

## II.     BACKGROUND

### A.     Facts alleged in the Amended Complaint

Plaintiff Jane Doe is a transgender female who identifies herself by a female name and female pronouns. Am. Compl. ¶¶ 13, 14(a). She is also HIV-positive and a person of color. *Id.* ¶¶ 70(f), 4. Doe was hired in or around March 2018 to work as a Cashier at Defendant's location. *Id.* ¶ 12. Doe had told Stephanie Almanzar, the manager at Triangle Doughnuts, that she was HIV-positive and undergoing hormone replacement therapy. *Id.* ¶ 81.

Doe alleges that during the course of her employment between March 2018 and May 2018, she experienced harassment and discrimination by co-workers and customers. *See generally* Am. Compl. ¶ 14. Doe's co-workers regularly misgendered Doe with a male name and male pronouns despite her requests to use her female name and female pronouns. *Id.* ¶ 14(c). For instance, Doe's Shift Supervisor, Lisa Last Name Unknown ("LNU"), held a supervisory role in the company and would frequently use Doe's male legal name, male pronouns, and "dude" when referring to Doe. *Id.* ¶¶ 14(a), 14(b). Other co-workers in managerial positions, such as Stephanie Almanzar, the manager, and Anot LNU, the assistant manager, acted similarly by regularly referring to Doe as "he," which encouraged further misgendering and harassment by both co-workers and third-party customers. *Id.* ¶¶ 14(c), 14(d). Co-workers asked Doe inappropriate and probing questions throughout her employment such as "are you a tranny?", "why do you wear a bra if you don't have breasts?", and whether Doe was going to have "[her] penis removed." *Id.* ¶¶ 14(e), 14(q), 14(h). Doe's co-workers also made statements dismissing her gender as a female, making statements such as "boy, you know you're not [a female]." *Id.* ¶ 14(q).

Customers, including regular customers, misgendered Doe on a frequent and sometimes daily basis. Am. Compl. ¶ 14(i). On one occasion, a customer stated "I don't want him serving me at the register" when referring to Doe. *Id.* ¶ 14(j). Another customer complained about having to use female pronouns or a female name when referring to Doe because she was "not a girl." *Id.* ¶ 14(k). On another occasion, a customer stated to Doe, "[y]ou're a man." *Id.* ¶ 14(m). Rather than addressing or preventing customer behaviors of misgendering and gender stereotyping, Doe's supervisors chose to reassign her to duties that were out of the view of customers. *Id.* ¶ 14(j). Lisa LNU also threatened to write Doe up if she did not work where she was assigned. *Id.* Doe was also told "[d]on't use the women's bathroom" because "[customers] don't feel comfortable with you going in there." *Id.* ¶ 14(l).

During the course of her employment, Doe was also subject to a stricter dress code than other female and cisgender[2] employees, such as being required to wear her hair in a ponytail and being prohibited from wearing nail polish or makeup. *See generally* Am. Compl. ¶¶ 14(n), 14(o), 14(p).

Several of Doe's interactions with her co-workers and customers were threatening, and they even became physical on one occasion. Am. Compl. ¶¶ 15(b), 15(c), 15(d). Specifically, in April or May 2018, Doe's co-worker tried to confront Doe aggressively as if she was going to try to physically fight her while calling her a "n-gga" and stating that Doe would "get [her] ass beat up." *Id.* ¶ 15(b). In the same time frame, a customer who was friends with one of Doe's coworkers approached Doe and told her that they heard she was "talking shit." *Id.* 15(c). On one occasion in the same time frame, a group of customers, including one of Doe's former co-

---

[2]   The term "cisgender" refers to "a person whose gender identity corresponds with the sex the person had or was identified as having at birth." *Cisgender*, MERRIAM-WEBSTER (June 9, 2020, 10:48 AM), http://merriam-webster.com/dictionary/cisgender.

workers, pushed Doe and made derogatory and threatening statements such as "I'll kill your bitch ass", referred to Doe as a "fucking faggot", and told her "[w]e don't like faggots." *Id.* ¶ 15(d). This incident was reported to the police. *Id.* Although Doe's manager gave her the option to go home if she did not feel safe, she was subsequently fired from her position after she chose to leave for the day. *Id.* ¶ 15(f).

Defendant, Triangle Doughnuts, stated to the EEOC that Doe was discharged for violating the company's policy on scheduling time off, which required employees to submit availability forms two weeks before the day off. Am. Compl. ¶ 77. Doe alleges that Defendant was not accommodating to her HIV-positive diagnosis since it may not be foreseeable for Doe to request off a full two weeks in advance if an unpredictable complication were to arise. *Id.* ¶ 79. Further, company policy also required three warning letters to precede termination. *Id.* ¶ 78. Doe did not receive three letters. *Id.*

### B. **Procedural background**

Doe filed a complaint against Defendants Dunkin' Donuts and Triangle Doughnuts on November 8, 2019 under the pseudonym "Jane Doe," along with a motion to proceed anonymously. *See* Pl.'s Compl. (ECF No. 1); Pl.'s Mot. To Proceed Anonymously (ECF No. 2). This Court entered an order on December 13, 2019 denying Doe's motion to proceed anonymously without prejudice since not all Defendants were served at the time and the time to effectuate service had not yet expired. Order (ECF No. 6). Dunkin' Donuts failed to timely respond to Doe's complaint, so a default notice was issued by this Court on December 26, 2019. Order (ECF No. 7).

Defendant, Triangle Doughnuts, filed a motion to dismiss Doe's complaint on December 20, 2019 pursuant to Fed. R. Civ. P. 12(b)(6) or to stay the matter pending the outcome of a case before the Supreme Court.[3] Def.'s Mot. To Dismiss (ECF No. 7).

Doe filed an Amended Complaint along with a second motion to proceed anonymously on January 3, 2020. Pl.'s Am. Compl. (ECF No. 12); Pl.'s Second Mot. To Proceed Anonymously (ECF No. 11). This Court denied the motion without prejudice on January 6, 2020 due to the fact that Dunkin' Donuts had not been properly served and because the time to effect service on Dunkin' Donuts had yet to expire. Order (ECF No. 13). On the same day, the Court dismissed Triangle Doughnut's motion to dismiss the initial complaint as moot. Order (ECF No. 14). On February 12, 2020, this Court also granted Dunkin' Donuts an extension through February 20, 2020 to respond to Doe's Amended Complaint. Order (ECF No. 20).

Defendant, Triangle Doughnuts, filed a motion to dismiss Doe's Amended Complaint on January 24, 2020 pursuant Fed. R. Civ. P. 12(b)(6) or to stay the matter pending the outcome of the case before the Supreme Court. Def.'s Mot. To Dismiss (ECF No. 15). Doe then filed a response opposing Defendant's motion to dismiss on February 8, 2020. Pl.'s Response in Opp'n to the Mot. Of Def. (ECF No. 18). Dunkin' Donuts also filed a motion to dismiss Plaintiff's Amended Complaint on February 13, 2020 pursuant to Fed. R. Civ. P. 12(b)(6). Def.'s Mot. To Dismiss (ECF No. 21).

The parties filed a stipulation on March 3, 2020, dismissing without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(a)(ii) all the claims asserted by Doe in the Amended Complaint against

---

[3] This decision from the Supreme Court was handed down on June 15, 2020. *See Bostock v. Clayton Cty.*, No. 17-1618, 2020 WL 3146686 (S. Ct. 2020) (holding that an employer violates Title VII for discrimination because of an individual's sex if they fire an individual for being homosexual or a transgender person).

Dunkin' Donuts Franchising LLC. Order (ECF No. 22). This Court has not yet determined whether Doe is legally entitled to proceed anonymously.

### III. LEGAL PRINCIPLES

#### A. <u>The requirement that the names of parties appear in the title of complaints</u>

Under the Federal Rules of Civil Procedure, every pleading is required to have a caption with the court's name, a title, file number, and Rule 7(a) designation. FED. R. CIV. P. 10(a). This requirement includes specifying the names of all parties in the title of the complaint. *Id.* Courts have explained that this level of specificity is necessary because of the long-held principle that "open and transparent proceedings [are] imperative to equitable outcomes." *Doe v. Univ. of Scranton*, No. 3:19-CV-1486, 2020 WL 1244368, *1 (M.D. Pa. 2020) (citing *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998)). Under this principle, citizens have a "right to know who is using their courts," *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)), and defendants have a "right to confront their accusers," *Megless*, 654 F.3d at 408 (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). This public right to knowledge is deeply rooted in the common law and predates even the Constitution. *N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 434 (3d Cir. 2016); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986).

#### B. <u>The law governing the use of pseudonyms for a party to proceed anonymously</u>

Even though courts have stated that a plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings," *Megless*, 654 F.3d at 408 (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)), parties have been allowed to proceed anonymously in exceptional cases, *Megless*, 654 F.3d at 408.

To satisfy the criteria for anonymity, a plaintiff must show (1) fear of severe harm and (2) that the fear of severe harm is reasonable. *Megless*, 654 F.3d at 408. Courts then apply a balancing test to determine if the plaintiff has a reasonable fear of severe harm that outweighs the public's interest in open litigation. *Id.* at 409. In favor of anonymity, courts have considered six non-exhaustive factors:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Doe v. Provident Life and Acc. Ins. Co.,* 176 F.R.D. 464, 467-68 (E.D. Pa. 1997); *see Megless*, 654 F.3d at 409. By contrast, three factors disfavor anonymity:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigants' identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Provident Life and Acc. Ins. Co.,* 176 F.R.D. at 467-68; *see Megless*, 654 F.3d at 409.  District courts have the discretion to determine whether the exceptional circumstances warranting anonymity are present. *Freedom from Religion Found. Inc. v. New Kensington-Arnold Sch. Dist.*, No. 2:12-CV-1319, 2012 WL 6629643, at *3 (W.D. Pa. 2012). Even if the motion to proceed anonymously is unopposed, there may still not be sufficient justification to proceed under a pseudonym. *Id.*

Cases that have been found to meet the criteria for anonymity involve matters that are of "highly sensitive and personal nature, real danger of physical harm, or circumstances where the

injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Doe v. University of Scranton*, No. 3:19-CV-1486, 2020 WL 1244368, *1 (M.D. Pa. 2020) (quoting *Zavaras*, 139 F.3d at 803). Specifically, the use of pseudonyms has been allowed in cases involving "abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Megless*, 654 F.3d at 408 (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)). For instance, a plaintiff was allowed to proceed with anonymity in a case where his management and co-workers harassed him for his sexual orientation through derogatory statements and "aggressive physical contact." *Doe v. Brennan*, No. 5:19-CV-5885, 2020 WL 1983873, *3 (E.D. Pa. 2020). On the other hand, courts have rejected anonymity if a plaintiff only suffers embarrassment or economic harm. *Megless*, 654 F.3d at 408. For instance, a plaintiff's desire to prevent additional damage to his personal and professional reputation from a sexual assault conviction is not enough to proceed with anonymity. *See Doe v. Temple University*, No. 14-04729, 2014 WL 4375613, *2 (E.D. Pa. 2014) (holding that the plaintiff's fear of being unable to attend medical school is not considered an "exceptional circumstance" for anonymity since many similarly situated plaintiffs have proceeded with litigation). Additionally, courts have excluded anonymity if the matter being litigated is not a prevalent issue in society. *Megless*, 654 F.3d at 410 (holding that falsely created suspicious persons alerts are not a widespread problem in the area).

In regard to transgender people specifically, courts have allowed anonymity due to the private and intimate nature of transgenderism as well as the widespread discrimination, harassment, and violence faced by these individuals. *See Doe v. Pa. Dep't of Corr.*, No. 4:19-CV-01584, 2019 WL 5683437, at *2 (M.D. Pa. 2019). For example, the United States District Court for the Middle District of Pennsylvania granted a motion to proceed under a pseudonym

for a transgender plaintiff because he kept his transgender status a secret and only disclosed it when absolutely necessary to satisfy legal requirements. *Id.* at *3. It was found that the encroachment into plaintiff's closely guarded privacy outweighed the necessity of having a public trial. *Id.; see also Doe v. Univ. of Scranton*, No. 3:19-CV-1486, 2020 WL 1244368 (M.D. Pa. 2020) (allowing anonymity in a case where plaintiff did not reveal his sexual orientation to anyone other than close friends, family, and medical providers). However, courts have balanced the need for a public trial and the need for plaintiff anonymity by requiring the plaintiff to disclose his or her legal name for purposes of conducting discovery and depositions and allowing the Court to reconsider grants of anonymity if circumstances change. *See Univ. of Scranton*, 2020 WL 1244368, at *3; *Pa. Dep't of Corr.*, 2019 WL 5683437, at *3.

## IV. ANALYSIS

In the present case, Plaintiff Jane Doe satisfies the legal standard for anonymity due to her reasonable fear of severe harm if her legal name is used. In considering the *Provident Life* balancing test, five of the six factors favoring anonymity weigh strongly in Plaintiff's favor, while none of the factors disfavoring anonymity weigh against her.

### A. Factors favoring Plaintiff's anonymity

Under the balancing test, factors (1), (2), (3), (5), and (6) — Plaintiff's extensive efforts to maintain her confidentiality throughout the lawsuit, the reasonable basis and substantiality of her desire to avoid disclosing her identity, the significant public interest in maintaining Plaintiff's confidentiality to litigate the issue, the high likelihood of Plaintiff choosing not to pursue the lawsuit if she is publicly identified, and the fact that Plaintiff's desire to sue pseudonymously is not for illegitimate ulterior motives, respectively — support Plaintiff's desire to remain anonymous. Factor (4) is neutral under Plaintiff's circumstances.

First, Plaintiff has kept her identity confidential for the entirety of the litigation to protect herself. Though she has openly and regularly expressed to Defendant her preference for female pronouns, Am. Compl. ¶¶ 13, 14(a), Plaintiff wants to live and present herself to the public as a female, so she does not publicly identify herself as transgender. Pl. Second Mot. To Proceed Anonymously at 8. Additionally, Plaintiff has not used her actual name at any point in the pleadings, and similar to *Doe v. University of Scranton* and *Doe v. Department of Corrections*, she has only revealed that she was transgender and HIV-positive to counsel, close friends, family, treating physicians, and employers "to the extent required." *Id.* In the present circumstances, Plaintiff only revealed these facts to her employers in an attempt to explain and address their discriminatory treatment. *Id.* Further, as a medical diagnosis, Plaintiff's HIV-positive status can be characterized as a matter that is "highly sensitive and personal in nature," which warrants privacy from public knowledge. *University of Scranton*, 2020 WL 1244368, at *1.

By filing under a pseudonym, Plaintiff also seeks to avoid additional threats or another violent interaction with her co-workers. Contrary to *Temple University* where the plaintiff's desire for anonymity arose from a fear of embarrassment and limited professional opportunities, *see* 2014 WL 4375613, the potential harm to Plaintiff in the current situation were her identity revealed risks being much more significant.

Similar to the plaintiff's experience discussed in *Brennan* — he was granted anonymity after facing "physically aggressive contact" from co-workers, 2020 WL 1983873, at *3 — several of Plaintiff's prior interactions with her co-workers have been threatening and even physically aggressive. Am. Compl. ¶¶ 15(b), 15(d). These interactions were so intimidating that Plaintiff chose to go home in the middle of her work shift as she did not feel safe. *Id.* ¶ 15(f). As

the court in *University of Scranton* explained, the criteria for anonymity is satisfied for matters involving "real danger of physical harm." 2020 WL 1244368, at *1. Thus, Plaintiff's desire to maintain anonymity throughout litigation to protect herself is entirely reasonable and not based on ulterior motives.

Under the above reasoning, factors (1), (2), and (6) — the extent to which plaintiff's identity has been kept confidential, the basis upon which disclosure is feared and its substantiality, and whether anonymity has illegitimate ulterior motives, respectively — support permitting Plaintiff to proceed anonymously.

Additionally, in regard to factor (3), the public interest for maintaining the confidentiality of the litigant's identity outweighs the need for a public judicial proceeding. Unlike the suspicious person alerts in *Megless* that were found to not be prevalent in society, 654 F.3d at 410, employment discrimination cases based on gender identity deal with important societal issues of equity and personal value.

Further, because forcing Plaintiff to reveal her identity risks putting her in danger of physical harm, *see* Am. Compl. ¶ 15, it is likely that Plaintiff would choose not to continue pursuing her claim, which is relevant to factor (5). It is also likely that other similarly situated litigants would also be deterred from litigating these types of claims for the same reasons. Though some litigants would still choose to continue a lawsuit despite possible danger, the threat of physical harm would risk deterring significantly more potential litigants than it would by exposing one's sexual assault charge to the public as in *Temple University.* Accordingly, these claims would go unresolved.

As a result, factors (3) and (5) — the magnitude of public interest in maintaining litigant's anonymity and the undesirability of plaintiff's refusal to pursue the case at the price of being publicly identified — support permitting Plaintiff to proceed under a pseudonym.

Finally, the Court finds that because the issue at hand is not purely legal in nature, under the circumstances of Plaintiff's case, factor (4) is neutral.

### B.  Factors disfavoring Plaintiff's anonymity

In analyzing the factors disfavoring anonymity — the universal level of public interest in access to the identities of the litigants, whether plaintiff is a public figure, or whether opposition to the pseudonym is illegitimately motivated — factors one and two do not weigh against Plaintiff's use of a pseudonym.

There is a relatively low public interest to access the identity of the litigants in this case. Though there is a "universal" public right to knowledge that is deeply ingrained in our judicial system, *N. Jersey Media Grp*, 836 F.3d at 434, there is also a significant interest in protecting Plaintiff from the risk of physical harm. *Univ. of Scranton*, 2020 WL 1244368, at *1. Additionally, the public's interest in knowing Plaintiff's identity is not significant as she is not a public figure.

## V.  CONCLUSION

For the foregoing reasons, the Court *sua sponte* grants Plaintiff *conditional* leave to proceed in this litigation under the pseudonym "Jane Doe." Moreover, Plaintiff's address shall remain off the docket. Plaintiff shall conduct her deposition and trial using a single, preferred name.[4] Defendant shall be allowed to challenge the anonymity issue if circumstances change of

---

[4] Defense counsel appears to want Plaintiff to use her legal, male name in the course of these proceedings. *See* Pl.'s Second Mot. To Proceed Anonymously at 3. Plaintiff does not oppose utilizing an identifying name during necessary proceedings, but wants to use a female

this case change. Similarly, the Court retains the right to reexamine the issue if circumstances change.

    A separate Order follows this Opinion.

                                                                 BY THE COURT:

                                                      */s/ Joseph F. Leeson, Jr.*
                                                      JOSEPH F. LEESON, JR.
                                                      United States District Judge

---

name consistent with her gender identity. *Id.* The Court finds Plaintiff's request to use a preferred, female name to be reasonable in light of the allegations in this case.