UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JANE DOE,                                          :
                Plaintiff,                  :
                               :
            v.                                  :               No. 5:19-cv-5275
                               :
TRIANGLE DOUGHNUTS, LLC,              :
                Defendant.                 :

_____

**O P I N I O N**
**Defendant's Motion to Dismiss for Failure to State a Claim,**
**ECF No. 15 — GRANTED, in part, and DENIED, in part**

**Joseph F. Leeson, Jr.**                                                          **July 16, 2020**
**United States District Judge**

## I.    INTRODUCTION

    In this employment discrimination action, Plaintiff Jane Doe[1] ("Doe") sues her former

employer, Triangle Doughnuts, LLC ("Triangle"), for myriad[2] violations of her civil rights based

on her race, as well as her transgender and HIV-positive status.  Before the Court is Triangle's

motion to dismiss the Amended Complaint for failure to state a claim.  For the reasons set forth

below, Triangle's motion is granted, in part, and denied, in part.

---

[1]    The Plaintiff has been granted leave to proceed under a pseudonym on a conditional
basis.  *See* ECF Nos. 23-24.

[2]    The Amended Complaint asserts eighteen causes of action.  *See* ECF No. 12.

II.     BACKGROUND

A.      Facts alleged in the Amended Complaint[3]

Doe is a transgender female[4] who identifies herself by a female name and female

pronouns.  Am. Compl. ¶¶ 13, 14(a).  She is also HIV-positive and a person of color.[5]  *Id.* ¶¶

70(f), 4.  Doe was hired in or around March 2018 to work as a cashier at Triangle, which

operates a Dunkin' Donuts in Bethlehem, Pennsylvania.  *Id.* ¶¶ 3, 12.

Doe alleges that during the course of her employment between March 2018 and May

2018, she experienced harassment and discrimination by coworkers and customers.  *See* Am.

Compl. ¶ 14.  Doe's coworkers regularly misgendered Doe with a male name and male pronouns

despite her requests to use her female name and female pronouns.  *Id.* ¶ 14(c).  For instance,

Doe's Shift Supervisor, Lisa, Last Name Unknown ("LNU"), held a supervisory role in the

company and would frequently use Doe's male legal name, male pronouns, and "dude" when

referring to Doe, despite Doe's requests for her to use female pronouns and a preferred female

name.  *Id.* ¶¶ 14(a)-(b).  Other coworkers in managerial positions, such as Stephanie Almanzar,

---

[3]     These facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Doe's favor.  *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).  Except where necessary for context, the Court's recitation of the allegations of the Amended Complaint does not include conclusory assertions or legal contentions, neither of which need be considered by the Court in determining the viability of Doe's claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

[4]     In the portion of the Amended Complaint dedicated to pleading violations of the Americans with Disabilities Act ("ADA"), Doe states that she "has an actual physical impairment in that [she] has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of the brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing."  Am. Compl. ¶ 65(a).  She also pleads in the alternative that she "has an actual physical and/or mental impairment in the form of gender dysphoria.  *Id.* ¶ 65(e); *see also id.* ¶¶ 70, 83.

[5]     Doe states that she is "biracial and identifies as Afro-Latina and a Black person."  Am. Compl. ¶ 149.

the manager, and Anot LNU, the assistant manager, acted similarly by regularly referring to Doe as "he," which encouraged further misgendering and harassment by both coworkers and third-party customers.  *Id.* ¶¶ 14(c), (d).  Coworkers also asked Doe inappropriate and probing questions throughout her employment.  For example, Sarah LNU, Doe's coworker, asked Doe "are you a tranny?"  *Id.* ¶ 14(e).  Another coworker, Beyonce LNU, asked Doe about her "sexual orientation," and whether Doe was going to have "[her] penis removed."  *Id.* ¶¶ 14(g), (h).  And Lisa LNU asked Doe "why do you wear a bra if you don't have breasts?"  *Id.* ¶ 14(q).  When Doe responded by stating that she is a transgender female and identifies as female, Lisa LNU stated "boy, you know you're not."  *Id.*

Customers, including regular customers, misgendered Doe on a frequent and sometimes daily basis.  Am. Compl. ¶ 14(i).  On one occasion, a customer stated "I don't want him serving me at the register" when referring to Doe.  *Id.* ¶ 14(j).  Another customer complained about having to use female pronouns or a female name when referring to Doe because she was "not a girl."  *Id.* ¶ 14(k).  On another occasion, a customer stated to Doe, "[y]ou're a man."  *Id.* ¶ 14(m).  Doe states that she frequently corrected and rebuffed these customers for their misgendering and harassment.  *Id.* ¶¶14(i), (k), 34, 35, 59.  However, rather than addressing or preventing customer behaviors of misgendering and gender stereotyping, Doe's supervisors acceded to the harassment and reassigned her to duties that were out of the view of customers.  *Id.* ¶ 14(j).  Lisa LNU also threatened to write Doe up if she did not work where she was assigned.  *Id.*  Doe was also told "[d]on't use the women's bathroom" because "[customers] don't feel comfortable with you going in there."  *Id.* ¶ 14(l).

During the course of her employment, Doe was also subject to a stricter dress code than other female and cisgender[6] employees, such as being required to wear her hair in a ponytail and being prohibited from wearing nail polish or makeup.  *See* Am. Compl. ¶¶ 14(n), (o), (p).

Several of Doe's interactions with her coworkers and customers were threatening, and even became physical on one occasion.  *See* Am. Compl. ¶¶ 15(b), (c), (d).  Specifically, in April or May 2018, Sarah LNU tried to confront Doe aggressively as if she was going to try to physically fight Doe while calling her a "n-gga" and stating that Doe would "get [her] ass beat up."  *Id.* ¶ 15(b).  In the same time frame, a customer who was friends with one of Doe's coworkers approached Doe and told her that they heard she was "talking shit."  *Id.* ¶ 15(c).  On another occasion in the same time frame, a group of three customers, including one of Doe's former coworkers, pushed Doe and made derogatory and threatening statements such as "I'll kill your bitch ass," referred to Doe as a "fucking faggot," and told her "[w]e don't like faggots."  *Id.* ¶ 15(d).  Doe asserts that these interactions were retaliation for her rebuffing of customers and coworkers who misgendered and harassed her.  *Id.* ¶ 43.

Doe reported the incident involving the three individuals to the police.  Am. Compl. ¶ 15(d).  Although Doe's manager told Doe something to the effect of, "[i]f you don't feel safe, go home" in response to the incident, when Doe stated she was going home, her manager told Doe that she was being taken off of the schedule.  *Id.* ¶ 15(e).  In April or May 2018, Stephanie Almanzar informed Doe that she was being taken off of the schedule permanently and that she no longer worked at Dunkin' Doughnuts.  *Id.* ¶ 15(f).

---

[6]     The term "cisgender" refers to "a person whose gender identity corresponds with the sex the person had or was identified as having at birth." *Cisgender*, MERRIAM-WEBSTER http://merriam-webster.com/dictionary/cisgender.

Doe claims that Triangle failed to provide prompt and appropriate action to correct and remedy the harassment against her.  Am. Compl. ¶ 16.  In support of this, Doe points out that Stephanie Almanzar stated the following to the Equal Employment Opportunity Commission ("EEOC"):  "Our customers are our number one priority[,] we are not allowed to argue or 'correct' a customer, it does go with [sic] the saying 'customers are always right' . . . no I did not and will not correct my customers."  *Id*.  Doe moreover claims that although Triangle's company handbook contains a non-discrimination and anti-discrimination policy related to "sexual orientation," it did not include such a policy for "gender identity" or "gender expression."  *Id*. ¶ 18.

According to Doe, she was objectively qualified for her position with Triangle, as she had previously been employed at a Dunkin' Donuts, had been previously employed as a server, and had prior customer service experience.  Am. Compl. ¶ 21.  She claims she was capable of performing the duties of her position with reasonable accommodations — being treated consistent with her gender identity, being referred to as female, and being allowed to use the female restroom — and that she in fact requested and was denied these reasonable accommodations.  *Id*. ¶¶ 84-85, 90.  Doe similarly alleges that near the end of her employment, she requested time off for reasons related to her HIV-positive diagnosis, however her request was denied and she ended up going into work while sick.  *Id*. ¶ 91.  According to Doe, Triangle was aware of both her transgender status as well as her HIV-positive status.  *Id*. ¶ 81.  In particular, Doe told Stephanie Almanzar that she was HIV-positive, undergoing hormone replacement therapy, and that being male was "not who [she was]."  *Id*.  Doe also recalls telling Stephanie Almanzar that she needed time off for "my diagnosis."  *Id*. ¶ 104.

Doe claims that in response to her EEOC charge, Triangle stated that Doe was discharged for violating the company's policy regarding scheduling time off, which required employees to submit availability forms two weeks before the day(s) they were requesting to take off.  Am. Compl. ¶ 26.  Doe maintains that this justification was pretextual.  *Id*.  Doe claims that her HIV-positive status prevented her from complying with this policy, as a person with HIV may require time off for complications that are not foreseeable two weeks in advance.  *Id.* ¶ 28.  Doe also alleges that company policy required three warning letters to precede termination, letters which she did not receive.  *Id.* ¶ 27.

In the end, Doe states that her treatment and eventual termination were direct consequences of her transgender and/or HIV-positive status, as well as retaliation for her requests for time off and for frequently rebuffing customers and coworkers who misgendered and harassed her.  *See, e.g*., Am. Compl. ¶¶ 20, 34, 103.  She also claims that her race as "Afro-Latina" was a motivating factor in her termination.  *Id*. ¶ 149.

### B.    Procedural background

On November 8, 2019, Doe filed the initial Complaint in this action against Triangle and Dunkin' Donuts, along with a motion to proceed in her suit anonymously through use of a pseudonym.  *See* ECF Nos. 1-2.  On December 13, 2019, the Court denied Doe's motion to proceed anonymously without prejudice and with leave to re-file after both Defendants had been served and Plaintiff's counsel conferred with Defendants' counsel regarding the substance of the motion.  *See* ECF No. 6.  Triangle filed a motion to dismiss the initial Complaint on December 20, 2019.  *See* ECF No. 9.  Several days later, on December 26, 2020, the Clerk of the Court issued notice that Dunkin' Donuts had failed to timely respond to the Complaint.  *See* ECF No. 10.

On January 3, 2020, Doe filed an Amended Complaint along with a second motion to proceed anonymously.  *See* ECF Nos. 11-12.  Several days later, the Court denied Doe's second motion to proceed anonymously without prejudice and with leave to re-file once both Defendants were served the Amended Complaint and all counsel had conferred regarding the substance of the motion.  *See* ECF No. 13.  On January 23, 2020, Triangle filed a motion to dismiss Doe's Amended Complaint.  *See* ECF No. 15.  Service was subsequently effected on Dunkin' Donuts, and it filed its own motion to dismiss the Amended Complaint on February 13, 2020.  *See* ECF No. 21.  However, by stipulation, all claims against Dunkin' Donuts were dismissed without prejudice on March 3, 2020, leaving Triangle the only active defendant.  *See* ECF No. 22.

On June 23, 2020, this Court issued a *sua sponte* Opinion and Order permitting Doe to proceed anonymously on a conditional basis.  *See* ECF Nos. 23-24.

## III.   LEGAL STANDARD

### A.   Motions to dismiss under FED. R. CIV. P. 12(b)(6) — failure to state a claim

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate pleading standard in federal civil actions and set forth a two-step approach to be used when deciding motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst.*, No. CV 3:14-1779, 2016 WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic recitation of the elements of a cause of action"

alone will not survive a motion to dismiss).  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  This standard, commonly referred as the "plausibility standard," "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at 556-57).  It is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the plaintiff has stated a plausible claim.[7]  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Putting these steps together, the Court's task in deciding a motion to dismiss for failure to state a claim is to determine whether based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 679; *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible.").

---

[7]     As the Supreme Court counseled, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679

In adjudicating a Rule 12(b)(6) motion, the scope of what may be considered is necessarily constrained:  A court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[8] *United States v. Gertsman*, No. 15-8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).

### B. Pleading standards for employment discrimination and retaliation claims — the prima facie elements need not be pled — such claims require only "facial plausibility"

At the outset, it is important to note that with respect to certain employment discrimination claims, a plaintiff need not plead the prima facie elements to survive a motion to dismiss.  *See Dreibelbis v. Cnty. of Berks*, No. 5:19-cv-494, 2020 WL 605884, at *7 (E.D. Pa. Feb. 7, 2020). In *Dreibelbis v. Cnty. Of Berks*, this Court explained in detail why discrimination and retaliation claims require only "facial plausibility." *Dreibelbis*, 2020 WL 605884, at *6 (explaining that "the plaintiff '[is] not required to plead a prima facie case in order to survive a motion to dismiss.'" (quoting *Kelly v. H.D. Supply Holdings*, Inc., No. CIV. 14-372, 2014 WL 5512251, at *3 (D.N.J. 2014))); *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (explaining that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of employment discrimination).  For a claim to be "facially plausible," it must be the case that the allegations state "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]."

---

[8]     Additionally, a court adjudicating a Rule 12(b)(6) motion may take judicial notice of certain undisputed facts.  *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

*Dreibelbis*, 2020 WL 605884, at *7 (quoting *Connelly v. Lane Const. Corp*., 809 F.3d 780, 789

(3d Cir. 2016)).

The reason for reviewing discrimination and retaliation claims in this manner at the

pleading stage is as follows.  At the burden of proof stage, discrimination and retaliation claims

are generally subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  Under this framework,

> the plaintiff must first establish a *prima facie* case of discrimination . . . . If a
> plaintiff establishes a *prima facie* case, the burden shifts to the employer to
> "articulate some legitimate, nondiscriminatory reason" for the adverse action
> against the employee. The plaintiff then must establish by a preponderance of the
> evidence that the employer's proffered reasons were merely a "pretext for
> discrimination, and not the real motivation for the unfavorable job action."

*Jajua v. Diakon Lutheran Soc. Ministries*, 299 F. Supp. 3d 645, 652 (E.D. Pa. 2018) (quoting

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).  However, "the *McDonnell*

*Douglas* framework does not apply in every employment discrimination case. For instance, if a

plaintiff is able to produce *direct* evidence of discrimination, he may prevail without proving all

the elements of a prima facie case."[9]  *Swierkiewicz*, 534 U.S. at 511 (emphasis added).

For this reason, the Supreme Court in *Swierkiewicz v. Sorema* recognized that it would be

"incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more

facts"— *i.e*., facts satisfying the prima facie elements of his claim —"than he may ultimately

---

[9]      It is important to note that at the motion to dismiss stage, the Court does not engage in
fact finding or with issues of evidence, proof, or burdens of proof; rather, the Court accepts all
well-pleaded factual allegations as true.  Therefore, the framework set forth in *McDonnell*
*Douglas* and its shifting burdens of proof are inapplicable to the instant analysis.  *See,*
*e.g., Bartlett v. Kutztown Univ.,* No. 13–4331, 2015 WL 766000, at *8 n.11 (E.D. Pa. Feb. 23,
2015) (noting that a plaintiff responding to a Rule 12(b)(6) motion "need not establish by a
preponderance of evidence that Defendants' purported reason for terminating Plaintiffs'
employment . . . was a pretext for discriminatory conduct" because "the *McDonnell*
*Douglas* burden-shifting standard does not apply" at the motion to dismiss stage).

need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* at 506; *see Kelly*, 2014 WL 5512251, at *4 ("Plaintiff need not plead all the elements of a prima facie case of discrimination because those elements may not be required at trial. Instead, plaintiff's claim must be facially plausible and give fair notice to the defendants of the basis of the claim.").

Importantly, this deferential pleading standard for discrimination and retaliation claims[10] has survived the transition of the general pleading standard from a "no set of facts" standard under *Conley v. Gibson*, 355 U.S. 41 (1957),[11] to the current "plausibility" standard ushered in by *Bell Atl. Corp. v. Twombly* and later *Ashcroft v. Iqbal.  See Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, No. CV 19-835, 2019 WL 4060843, at *5 (E.D. Pa. Aug. 27, 2019) ("Although [*Swierkiewicz*] pre-dated *Twombly* and *Iqbal*, the Third Circuit has continued to follow its guidance in Title VII cases thereafter.")[12]

_____

[10]    Retaliation is a species of discrimination.  *Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 196 (3d Cir. 2020) ("Retaliation is . . . a form of 'discrimination' because the complainant is subjected to differential treatment." (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005))); *see Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) ("If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action."). Accordingly, Plaintiffs asserting claims of retaliation need not allege the prima facie elements of their claims to survive a motion to dismiss.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (explaining that a plaintiff's "retaliation claim may survive [a] motion to dismiss if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the prima facie elements).
[11]    The standard articulated in *Conley*, which preceded the current standard, held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.
[12]    District courts continue to follow the rule set forth in *Swierkiewicz.  See, e.g.*, *Sztroin v. PennWest Indus. Truck, LLC*, No. CV 17-665, 2017 WL 4355575, at *4 (W.D. Pa. Oct. 2, 2017) (explaining that a Title VII plaintiff need not "establish a prima facie case" in order to survive a motion dismiss; rather, the plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [she] was a member of a protected class and that she suffered an adverse employment action"); *Watson v. Department of Services for*

The Court proceeds to address Doe's eighteen causes of action with this framework in mind.

## IV. ANALYSIS

 Doe brings the following eighteen causes of action:  (I) hostile work environment based on gender stereotyping in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (II) wrongful termination based on gender stereotyping in violation of Title VII; (III) retaliatory termination in violation of Title VII; (IV) hostile work environment based on gender stereotyping in violation of the Pennsylvania Human Relations Act ("PHRA"); (V) wrongful termination based on gender stereotyping in violation of the PHRA; (VI) retaliatory termination in violation of the PHRA; (VII) hostile work environment based on disability in violation of the Americans with Disabilities Act ("ADA"); (VIII) wrongful termination based on disability in violation of the ADA; (IX) failure to accommodate disability in violation of the ADA; (X) retaliatory termination in violation of the ADA; (XI) hostile work environment based on gender expression in violation of the Bethlehem Human Relations and Non-Discrimination Ordinance ("BHRNDO"); (XII) wrongful termination based on gender expression in violation of the BHRNDO; (XIII) retaliatory termination in violation of the BHRNDO; (XIV) failure to accommodate gender identity in violation of the BHRNDO; (XV) failure to accommodate disability in violation of the BHRNDO; (XVI) hostile work environment based on race in

---

*Children, Youths and Their Families Delaware,* 2013 WL 1222853, * 4 (D. Del. Mar. 26, 2013) (reviewing the sufficiency of a Title VII race discrimination claim and concluding that "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a *prima facie* case of discrimination under *McDonnell Douglas*") (collecting cases); *Pietek v. Don Rosen Imports,* 2013 WL 968294, *2 (E.D. Pa., March 13, 2013) (explaining, with respect to *Swierkiewicz,* that "[a]lthough th[e] decision pre-dated *Twombly* and *Iqbal,* the Third Circuit has continued to follow its guidance in Title VII cases decided thereafter").

violation of 42 U.S.C § 1981; (XVII) wrongful termination based on race in violation of 42

U.S.C § 1981; and (XVIII) retaliatory termination in violation of 42 U.S.C § 1981.

A.    **Hostile work environment based on gender stereotyping (claims I, IV, and XI)**

The Court addresses Doe's several hostile work environment claims based on gender

stereotyping together.  *See Hewitt v. BS Transportation of Illinois, LLC*, 355 F. Supp. 3d 227,

237 (E.D. Pa. 2019) ("The proper analysis under Title VII and the Pennsylvania Human

Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts

interchangeably." (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001))); *see also*

*Philadelphia Hous. Auth. v. Am. Fed'n of State, Cty. & Mun. Employees*, 956 A.2d 477, 484 (Pa.

Commw. Ct. 2008*), aff'd sub nom. Philadelphia Hous. Auth. v. Am. Fed'n of State, Cty. & Mun.*

*Employees, Dist. Council 33, Local 934*, 617 Pa. 69, 52 A.3d 1117 (2012).

"Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the

conditions of [the plaintiff's] employment and create an abusive working environment.'"[13]

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav.*

---

[13]    The applicable statutory language provides as follows:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's race, color,
religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in
any way which would deprive or tend to deprive any individual of employment
opportunities or otherwise adversely affect his status as an employee, because of
such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

*Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in original)).  "To state a hostile work environment claim, a plaintiff must adequately plead that: "1) the employee suffered intentional discrimination because of his/her [gender], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]."  *Henley v. Brandywine Hosp., LLC*, No. CV 18-4520, 2019 WL 3326041, at *6 (E.D. Pa. July 24, 2019) (quoting *Castleberry v. STI Grp*., 863 F.3d 259, 263 (3d Cir. 2017)).  A court reviewing allegations in support of a claim of hostile work environment must evaluate "[t]he totality of the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Suri v. Foxx*, 69 F. Supp. 3d 467, 480 (D.N.J. 2014) (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993)).

Triangle argues that Doe fails to plead a claim of hostile work environment based on gender stereotyping because her "claims are for gender misidentification," and "[c]laims for gender misidentification have not been recognized as a legal cause of action in Title VII claims." Defendant's Memorandum in Support of its Motion ("Def.'s Mem.") [ECF No. 16] at 9.  While the parties clearly disagreed on this point at the time their motion papers were filed — and Doe would likely disagree that this is even an accurate characterization of her suit — there can be no disagreement at present about the dispositive issue.  Very recently, in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020), the Supreme Court held that Title VII's language protects homosexual and transgender individuals from discrimination.  *See id*. at 1741 ("The statute's message for our cases is equally simple and momentous: An individual's homosexuality or

transgender status is not relevant to employment decisions. That's because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."). It naturally follows that discrimination based on gender stereotyping falls within Title VII's prohibitions.[14] *See id.* at 1741-42 ("[T]ake an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.").

The question then becomes whether Doe has pleaded facts capable of making out her hostile work environment claim. The Court concludes that she has. Doe states that she suffered intentional discrimination at the hands of Triangle employees because of her gender identity. In addition to being misgendered, she was prevented from using the women's bathroom, had her duties changed so as to be kept out of the view of customers, was asked probing questions about her anatomy and gender identity, was subject to a stricter dress code than other female and cisgender employees, and was ultimately terminated. *See* Am. Compl. ¶¶ 14(a) – 15(f). Reading the Doe's allegations in the light most favorable to her, the Court is also satisfied that the conduct to which she was subjected was sufficiently severe or pervasive to support her claim, that it detrimentally affected her, and that it would have also detrimentally affected a reasonable person in Doe's circumstances. Finally, the Court is satisfied that Doe's allegations tie the conduct she was forced to abide to her supervisors at Triangle — in particular, Doe's Shift

---

[14]     Even before *Bostock*, courts in this jurisdiction "recognized a wide variety of 'gender stereotyping' claims." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 551 (E.D. Pa. 2017) (collecting cases).

Supervisor Lisa, manager Stephanie Almanzar, and assistant manager Anot.[15] *See id*.; *see also*

*id.* ¶ 16.  Therefore, she has adequately pleaded a hostile work environment claim based upon

gender stereotyping in violation of Title VII, the PHRA, and the BHRNDO.[16]  *See Khalifeh v.*

_____

[15]      Triangle argues that "Plaintiff's averments of inappropriate conduct must be segregated into claims by co-workers and claims by customers, inclusive of former co-workers."  Def.'s Mem. at 12.  Triangle is correct to observe, in essence, that

> [u]nder Title VII, an employer's liability for [ ] harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a 'supervisor,' however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).  However, the Court is satisfied that even disregarding the comments and conduct of customers and coworkers — that is, considering only the comments and conduct of Doe's supervisors at Triangle — her allegations are sufficient to state a claim of hostile work environment as against Triangle.  Expanding the pool of potential discriminatory conduct to include the conduct and comments of coworkers and customers that Triangle allegedly permitted to flourish would only serve to strengthen Doe's claim.  *See id.* at 447-49 ("[A]n employer will always be liable when its negligence leads to the creation or continuation of a hostile work environment. . . . Assuming that a harasser is not a supervisor, a plaintiff could still prevail by showing that his or her employer was negligent in failing to prevent harassment from taking place.").  Moreover, while Triangle may, at a later stage of the litigation, show that its supervisors exercised reasonable care to prevent and correct harassment of Doe — an argument with which Doe would nonetheless disagree in light of Stephanie Almanzar's statements to the EEOC, *see* Am. Compl. 16 — such showing would be by way of an affirmative defense that the Court finds inappropriate to evaluate at this stage of the proceedings in light of Doe's existing allegations as to her supervisors.

[16]      Triangle also argues that Doe has failed to exhaust her administrative remedies as to her claim under the BHRNDO.  *See* Def.'s Mem. at 19-20.  However, the Court does not find it appropriate to dismiss this claim at present on this ground.  "Failure to exhaust available administrative remedies is an affirmative defense. As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust available administrative remedies."  *Murphy v. Grochowski*, No. 3:18-CV-01404, 2020 WL 806584, at *4 (M.D. Pa. Jan. 7, 2020), *report and recommendation adopted*, No. CV 3:18-1404, 2020 WL 815773 (M.D. Pa. Feb. 18, 2020) (internal citation omitted).  Although "a court may dismiss a complaint based on an affirmative defense if it is clear from the face of the complaint that it is barred by the affirmative

*Duff & Phelps Corp.*, No. CV 16-4572, 2017 WL 1003220, at *6 (D.N.J. Mar. 15, 2017)

(declining to dismiss plaintiff's hostile work environment claim at the pleading stage and noting

that "[c]ourts have been hesitant to dismiss hostile work environment claims under Rule 12(b)(6)

because the proof of this claim is highly fact-specific" (quoting *Garrett v. U.S. Dep't of Veterans*

*Affairs*, No. 05-1164, 2007 WL 1875535, at *7 (D.N.J. June 28, 2007))).

     **B.**     **Hostile work environment based on race in violation of 42 U.S.C § 1981
(claim XVI)**

     Doe also asserts a claim for hostile work environment under 42 U.S.C § 1981 based on

her race.  Pursuant to § 1981(a),

> [a]ll persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be subject
> to like punishment, pains, penalties, taxes, licenses, and exactions of every kind,
> and to no other.

Although the rights guaranteed by "§ 1981 and Title VII 'are separate, distinct, and

independent,'" *Hamilton v. City of Philadelphia*, No. CV 18-05184, 2019 WL 4220899, at *4

(E.D. Pa. Sept. 5, 2019) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461

(1975)), with respect to a claim of hostile work environment, both statutes require the same

elements:  allegations that "(1) the employee suffered intentional discrimination because of [her

race], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally

affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the

---

defense," *id.*, it is not clear to the Court that Doe has failed to exhaust administrative remedies as
to her BHRNDO claims, *see Vandegrift v. City of Philadelphia*, 228 F. Supp. 3d 464, 482–83
(E.D. Pa. 2017) ("Ms. Vandegrift's dual-filing of her charges of discrimination with the EEOC
and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance
exhaustion requirement because her claims under the Philadelphia Ordinance are predicated
upon the same facts as the claims in her EEOC charges.").

same [race] in that position, and (5) . . . respondeat superior liability [exists]."  *Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 474 (E.D. Pa. 2019) (quoting *Woodard v. PHB Die Casting*, 255 F. App'x 608, 609 (3d Cir. 2007)).

Unlike her claims for hostile work environment based upon gender stereotyping, Doe has failed to adequately plead a claim of § 1981 race-based hostile work environment.  The Amended Complaint's allegations are almost exclusively directed at the alleged discrimination Doe suffered as a result of her status as a transgender woman; there is next to nothing with respect to mistreatment based upon Doe's race.  There are similarly no allegations to support vicarious liability.

Doe states that she is "biracial and identifies as Afro-Latina and a Black person."  Am. Compl. ¶ 149.  However, the only allegations the Court can identify related to the conduct of others vis-à-vis Doe's race are the allegation that Doe's coworker Sarah approached Doe aggressively as if she was going to try to fight her while calling Doe a "n-gga," and stating that Doe would "get [her] ass beat up," *id.* ¶ 15(b), as well as the overlapping and somewhat ambiguous allegation that Doe "was referred to as 'boy' and 'n-gga' during her employment," and that "[t]he word 'n-gga' was used by a co-employee who threatened to beat [Doe] up,"[17] *id.* ¶ 150.  In the Court's view, these allegations fail to show a workplace in which Doe suffered sufficiently pervasive or severe discrimination *because of her race.  See Shaw*, 357 F. Supp. 3d at 475 ("The discriminatory conduct must be so extreme as to amount to a change in the terms and conditions of employment. Unless they are extremely severe, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." (quoting *Woodard*, 255 F.

---

[17]     The only additional race-related allegation concerns the assumed race of Doe's supervisors.  *See* Am. Compl. ¶ 153.

App'x at 609)).  What is more, there is no indication that Doe suffered any discrimination based

on her race *at the hands of her supervisors at Triangle* —"Sara" was Doe's coworker, and there

is no indication who referred to Doe as "boy."  In this way, Doe has failed to plead facts from

which the Court can infer the existence of Triangle's vicarious liability for the conduct of its

employees.[18]

### C.      Hostile work environment based on disability in violation of the ADA (claim VII)

Doe's remaining hostile work environment claim is brought under the ADA and is based

on an alleged disability.  To state a claim under the ADA for hostile work environment, an

employee must allege, similar to a hostile work environment claim under Title VII and § 1981,

"that [s]he suffered intentional discrimination because of h[er] disability; the discrimination was

'sufficiently severe or pervasive to alter the conditions of [her] employment and create an

abusive work environment'; the discrimination detrimentally affected h[er]; and it would have

detrimentally affected a reasonable person in h[er] position."  *Mercer v. Se. Pa. Transit Auth.*, 26

F. Supp. 3d 432, 443 (E.D. Pa. 2014) (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168

F.3d 661, 667 (3d Cir. 1999)), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015).

In examining alleged "severe or pervasive" discrimination in a workplace, the court must "'look[

] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity;

---

[18]      This conclusion differs from the Court's conclusion with respect to Triangle's vicarious liability under Title VII and the PHRA for hostile work environment based on gender stereotyping.  In the context of gender stereotyping, the allegations clearly illustrate discriminatory conduct at the hands of Doe's supervisors.  Here, in the absence of any allegations with respect to her supervisors, the Court finds the vicarious liability element of her claim to be unsatisfied.  The Court reaches this conclusion notwithstanding that Triangle would be able to subsequently raise as an affirmative defense its "reasonable care" to prevent harassment or Doe's "unreasonable failure" to take advantage of corrective opportunities. *Vance*, 570 U.S. at 424.

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998) (quotation omitted)).

Triangle argues that being transgender, and/or having a condition identified as "gender dysphoria" as described by Doe, is not a recognized disability under the ADA. *See* Def.'s Mem. at 17-18. It moreover claims Doe fails to allege that she ever put Triangle on notice of any "neuroanatomy impairment, mental health disorder, or gender dysphoria." *Id*. at 17. With respect to Doe's HIV-positive status, Triangle contends that Doe similarly fails to plead that she put Triangle on notice of her HIV-positive status and any corresponding need for an accommodation. *See id*. at 18-19. In response to these arguments, Doe points to a prior decision of this Court — *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123 (E.D. Pa. May 18, 2017) — which, for purposes of a motion to dismiss, construed the exclusions from the definition of "disability" contained in 42 U.S.C. § 12211(b) narrowly so as not to include "gender dysphoria." *See* Plaintiff's Memorandum in Opposition to Defendant's Motion ("Pl.'s Opp'n.") [ECF No. 18] at 35-36. She moreover contends that she has adequately pleaded notice of her HIV-positive status. *See, e.g*., *id*. at 30.

As Triangle recognizes, Doe is pleading her ADA hostile work environment claim — and indeed, all of her ADA claims — on two overarching theories of liability: one in which her gender dysphoria and/or her transgender status constitutes a disability, *see* Am. Compl. ¶¶ 65(a)-

(e),[19] and one in which her HIV-positive status constitutes a disability, *see id.* ¶ 65(f).  The Court

will address each theory separately, beginning with her HIV-based disability.

 "Disability" under the ADA is defined as "(A) a physical or mental impairment that

substantially limits one or more major life activities of such individual; (B) a record of such an

impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

"Major life activities" include but are not limited to "caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working," as well as the

operation of a major bodily function, including but not limited to "functions of the immune

system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory,

circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2).  Importantly, the

ADA was amended in 2008 to specifically cover certain impairments, including HIV-AIDS, that

were not receiving the protection Congress initially intended.  *See Koller v. Riley Riper Hollin &*

*Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012).  While "[a]n impairment need not prevent,

or significantly or severely restrict, the individual from performing a major life activity in order

to be considered limiting," it is also the case that "not every impairment will constitute a

disability" under the ADA.  29 C.F.R. § 1630.2(j)(ii); *see Koller*, 850 F. Supp. 2d at 513

("[E]ven under the relaxed ADAAA standards, a plaintiff is still required to plead a substantially

limiting impairment.").

---

[19]     Doe states that she "has an actual physical impairment in that [she] has a biological
condition plausibly of physical origin due to brain neuroanatomy, and the formation of the brain
neuroanatomy in the womb, which substantially limits the major life activities of interacting with
others, social functioning, and reproducing."

Here, Doe has pleaded a prima facie claim of ADA hostile work environment based upon her HIV-positive status.  As an initial matter, the Court is skeptical that Doe has plausibly alleged that her HIV-positive status substantially limited one or more of her major life activities. The only references to the limitations caused by her HIV diagnosis is the somewhat conclusory allegation that "HIV substantially limits the major function of the immune system," Am. Compl. ¶ 65(f), and the allegation that as someone with HIV, Doe may require time off from work that is not foreseeable more than two weeks in advance, *see id.* ¶¶ 26, 79, 91.[20]  However, at this stage of the litigation, drawing all reasonable inferences in her favor, the Court will accept that her HIV diagnosis constitutes a disability under the ADA.  Doe has moreover adequately pleaded the other elements of her claim:  She suffered intentional discrimination based on her disability in the form of her termination; the termination, while arguably not "pervasive," was sufficiently "severe" in that it altered the conditions — indeed, the existence — of her employment with Triangle; her termination detrimentally affected Doe; and it would have detrimentally affected a reasonable person in Doe's position.[21]  Doe's ADA hostile work environment claim based upon her HIV-positive status therefore survives Triangle's motion to dismiss.

The Court next turns to Doe's ADA hostile work environment claim based on alternative theories related to her gender identity:  that she suffered a hostile work environment based upon either (1) "an actual physical impairment" caused by "a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social

---

[20]    *Compare Bragdon v. Abbott*, 524 U.S. 624, 641 (1998) (finding that a woman's "HIV infection is a physical impairment which substantially limits a major life activity" where it placed limitations on her ability to reproduce).

[21]    The Court is also satisfied that Doe has alleged that Triangle was aware of her HIV-positive status.  *See* Am. Compl. ¶¶ 91, 104.

functioning, and reproducing," Am. Compl. ¶ 65(a); or (2) "an actual physical and/or mental impairment in the form of 'gender dysphoria' ('GD'), defined as clinically significant distress with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing," *id*. ¶ 65(e).  The threshold question with respect to this claim is whether Doe has adequately pleaded the existence of a disability under the ADA.

The ADA specifically excludes from the definition of "disability" the following conditions:  "(1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, [and] other sexual behavior disorders; (2) compulsive gambling, kleptomania, [and] pyromania; [and] (3) psychoactive substance use disorders resulting from current illegal use of drugs."  42 U.S.C. § 12211(b).  As a district court from within this Circuit recently observed, "[a]mong the courts who have discussed the issue, there is significant disagreement whether gender dysphoria falls into the ADA's categorical exclusions."  *London v. Evans*, No. CV 19-559, 2019 WL 5726983, at *6 n.3 (D. Del. Nov. 5, 2019).

In the interest of avoiding the constitutional issue of whether a plaintiff's equal protection rights were violated by construing 42 U.S.C. § 12211(b) to exclude transgenderism — an argument Doe also makes in the instant suit, *see* Am. Compl. ¶ 65(d) — this Court previously concluded the following:

> [I]t is fairly possible to interpret the term gender identity disorders narrowly to refer to simply the condition of identifying with a different gender, not to exclude from ADA coverage disabling conditions that persons who identify with a different gender may have—such as Blatt's gender dysphoria, which substantially limits her major life activities of interacting with others, reproducing, and social and occupational functioning. Because this interpretation allows the Court to avoid the constitutional questions raised in this case, it is the Court's duty to adopt it.

*Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123, at *4 (E.D. Pa. May 18,

2017).  Following *Blatt*, the district court for the District of Massachusetts concluded something

similar when it found as follows:

> The ADA's exclusion applies only to "gender identity disorders *not resulting* from
> physical impairments," 42 U.S.C. § 12211(b)(1) (emphasis supplied), and Doe has
> raised a dispute of fact that her GD may result from physical causes. While medical
> research in this area remains in its initial phases, Doe points to recent studies
> demonstrating that GD diagnoses have a physical etiology, namely hormonal and
> genetic drivers contributing to the in utero development of dysphoria. *See* Doe
> Opp'n, Dkt #33 at 15 (citing Christine Michelle Duffy, *The Americans With
> Disabilities Act of 1990 and the Rehabilitation Act of 1973, in* Gender Identity and
> Sexual Orientation Discrimination in the Workplace: A Practical Guide (Christine
> Michelle Duffy ed., Bloomberg BNA 2014) ). A further distinction can be made
> between the definition given in DSM-IV of "gender identity disorders," and that
> now given in DSM-V of "gender dysphoria." In contrast to DSM-IV, which had
> defined "gender identity disorder" as characterized by a "strong and persistent cross
> gender-identification" and a "persistent discomfort" with one's sex or "sense of
> inappropriateness" in a given gender role, the diagnosis of GD in DSM-V requires
> attendant disabling physical symptoms, in addition to manifestations of clinically
> significant emotional distress.

*Doe v. Massachusetts Dep't of Correction*, No. CV 17-12255, 2018 WL 2994403, at *6 (D.

Mass. June 14, 2018).

The Court recognizes the dynamic nature of both the legal and medical precedent with

respect to issues surrounding "transgenderism," "gender identity," and "gender dysphoria."  In

light of that dynamism, the Court declines at this stage of the proceeding to dismiss Doe's hostile

work environment claim under the ADA based on her alternative theories of disability related to

either gender dysphoria or some other neuroanatomical disability related to her gender identity.

This finding is without prejudice to a subsequent challenge, accompanied with a more significant

briefing of the issue by the parties on summary judgment.[22]

---

[22]     As with any finding, the Court reserves the right to revisit its findings in *Blatt* should
there be grounds to do so, especially in light of the ever-changing legal landscape surrounding
transgender issues.

Assuming, for purposes of Triangle's motion to dismiss, that Doe has sufficiently pleaded the existence of a disability related to her transgenderism, the Court also finds that she has stated the other elements of her ADA hostile work environment claim based upon this disability:  She was frequently misgendered, was prevented from using the women's bathroom, had her duties changed so as to be kept out of the view of customers, was asked probing questions about her anatomy and gender identity, was subject to a stricter dress code than other female and cisgender employees, and was ultimately terminated.  *See* Am. Compl. ¶¶ 14(a)-15(f).  In the Court's view, these allegations are sufficient to allow this claim to survive Triangle's motion to dismiss.

### D.      Discrimination based on gender stereotyping (claims II, V, and XII)

In claims II, V, and XII of the Amended Complaint, Doe asserts claims for "wrongful termination" based on gender stereotyping in violation of Title VII, the PHRA, and the BHRNDO, respectively.  The Court construes Doe to be asserting claims for discrimination based on gender stereotyping in these causes of action, and because the analysis under the different statutory frameworks is the same, the Court evaluates these claims together.  *See Hewitt v. BS Transportation of Illinois, LLC*, 355 F. Supp. 3d 227, 237 (E.D. Pa. 2019).

As the Court has already explained in the context of Doe's hostile work environment claims based on gender stereotyping, even before the recent Supreme Court decision in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020), Title VII was construed to "prohibit[ ] gender stereotyping and discrimination 'because of sex.'"  *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 551 (E.D. Pa. 2017).  After *Bostock*, there can be no doubt that discrimination in the form of gender stereotyping is, under Title VII, discrimination on the basis of sex.  *See Bostock*, 140 S. Ct. at 1741-42 (explaining that where "an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female" and "retains an

otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision").

The prima facie elements of a claim of discrimination in the form of wrongful termination are as follows:  that the plaintiff (1) is a member of a protected class, (2) was discharged, (3) was qualified for the job, and (4) was replaced by someone outside of the protected class or that persons outside the protected class were treated more favorably in a manner that gives rise to an inference of discrimination.  *Doe v. Casino*, 381 F. Supp. 3d 425, 429-30 (E.D. Pa. 2019) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000)).  However, as discussed at length previously, a discrimination plaintiff does not need to affirmatively plead all of the prima facie elements of a discrimination claim, because, if direct evidence of discrimination is discovered, the plaintiff might not need to prove each of those elements at trial.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).  Rather, to survive a motion to dismiss, a discrimination plaintiff needs only to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

And yet, turning to Doe's allegations, the Court is satisfied that she has pleaded the prima facie elements of her claim for discriminatory wrongful termination based on gender stereotyping.  As a transgender woman, Doe is a member of a protected class.  *See* Am. Compl. ¶¶ 13, 14(a); *see generally Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020).  She claims, and it appears to be undisputed, that she was discharged from her position at Triangle.  *See* Am. Compl. ¶ 15(f).  Doe also claims that she was qualified for her position.  *See id*. ¶ 21.

Finally, the same allegations identified in the context of Doe's Title VII hostile work environment claim are sufficient to give rise to an inference that she was treated less favorably than others outside of her class as a result of discriminatory intent:  In addition to being misgendered, she was prevented from using the women's bathroom, had her duties changed so as to be kept out of the view of customers, was asked probing questions about her anatomy and gender identity, was subject to a stricter dress code than other female and cisgender employees, and was ultimately terminated.  *See* Am. Compl. ¶¶ 14(a)-15(f).  As a result, Doe's discrimination claims for wrongful termination under Title VII, the PHRA, and the BHRNDO, survive Triangle's motion to dismiss.

### E.   Discrimination based on race in violation of 42 U.S.C § 1981 (claim XVII)

For the same reasons that Doe is unable to state a claim for hostile work environment based on race, she is also unable to state a claim for discriminatory wrongful termination based on race — even under the more deferential pleading standard applicable to discrimination claims.

The only allegations the Court can identify related to Doe's race are as follows:  Doe's coworker Sarah approached Doe aggressively as if she was going to try to fight her while calling Doe a "n-gga," and stating that Doe would "get [her] ass beat up," Am. Compl. ¶ 15(b); Doe "was referred to as 'boy' and 'n-gga' during her employment;" and that "[t]he word 'n-gga' was used by a co-employee who threatened to beat [Doe] up," *id*. ¶ 150.  In the Court's view, these allegations fail to give rise to an inference that Doe was treated less favorable than other employees because of her race as an Afro-Latina woman.[23]  *See* Am. Compl. ¶ 149.

---

[23]     In her opposition memorandum, Doe contends that "it is well-settled under *Bellissimo v. Westinghouse Elec. Corp*., 764 F.2d 175, 179-80 (3d Cir.1985) that 'a plaintiff alleging a discriminatory firing need only show that he [or she] was fired from a job for which he [or she] was qualified while others not in the protected class were treated more favorably. . . . Proof of discharge will establish a prima facie showing in a Title VII suit.'"  Pl.'s Opp'n. at 39.  Even

Additionally, in the Court's view, these allegations fail to state "enough facts to raise a reasonable expectation that discovery will reveal evidence of" discriminatory intent. *Connelly*, 809 F.3d at 789. As a result, this claim fails to survive Triangle's motion to dismiss.

### F.  Discrimination based on disability in violation of the ADA (claim VIII)

In claim VIII, Doe alleges that she suffered discrimination in the form of wrongful termination based on her disabilities in violation of the ADA. A prima facie claim of discrimination under the ADA requires a plaintiff to show she is "(1) disabled within the meaning of the ADA, (2) can perform essential functions of h[er] job with or without reasonable accommodation, and (3) suffered an adverse employment action" as a result of discrimination based on her disability.[24] *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017) (citing *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000) and *Gaul v. Lucent Technologies Inc.,* 134 F.3d 576 (3d Cir. 1998)). As with other discrimination claims, an ADA discrimination plaintiff need not affirmative plead each prima facie element, but rather must simply state facts sufficient to indicate that discovery can reasonably be expected to lead to evidence satisfying the claim's elements. *Connelly*, 809 F.3d at 789; *Swierkiewicz*, 534 U.S. at 511.

---

accepting Doe's statement of the law as correct, the allegations in her Amended Complaint are unable to satisfy this standard. Her allegations pertaining to her supervisors' race — she avers that "Lisa is believed to be White/Caucasian; Anot is believed to be Indian; and Stephanie Almanzar is not believed to be African-American/Black," Am. Compl. ¶ 153 — say nothing about the treatment of Doe's *coworkers* outside of her class. And the Court finds no other substantive allegations pertaining to any other Triangle employees related to race in the Amended Complaint's 167 paragraphs.

[24]      The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

For reasons already discussed at length in the context of Doe's ADA hostile work environment claim, the Court continues to assume that she has adequately pleaded disabilities in the form of her HIV-positive status and transgender status.[25]  Operating on this assumption, the Court is satisfied that she has adequately stated a claim for discrimination under the ADA.  Doe claims that she was able to perform the essential functions of her job with reasonable accommodations — being treated consistent with her gender identity, being referred to as female, being allowed to use the female restroom, and being allowed a sick-leave policy that accommodated medical issues arising from her HIV-diagnosis.  *See* Am. Compl. ¶¶ 84-85, 90, 91, 104.  Doe has also alleged that she suffered an adverse employment action as a result of discrimination based on her disability:  with respect to her HIV-diagnosis, she was terminated,[26] for the pretextual reason of violating the company's attendance policy, *id*. ¶¶ 15(f), 26; with respect to her transgender identity, in addition to being terminated, she was frequently misgendered, was prevented from using the women's bathroom, had her duties changed so as to be kept out of the view of customers, was asked probing questions about her anatomy and gender identity, and was subject to a stricter dress code than other female and cisgender employees, *see id*. ¶¶ 14(a) – 15(f).  Her claim of discriminatory wrongful termination in violation of the ADA therefore survives Triangle's motion to dismiss.

---

[25]     For reasons already stated, this finding continues to be without prejudice to a later challenge.

[26]     It is well settled that "termination is an adverse employment action."  *Bossi v. Bank of Am.*, No. 3:14-CV-02301, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016) (citing *Thompson v. Ass'n of Pa. State Coll. and Univ. Faculties*, No. 1-04-0317, 2005 WL 2030475, at *4 (M.D. Pa. 2005)).

**G.** **Retaliatory termination based on gender stereotyping (claims III, VI, and XIII)**

The Court next turns to Doe's several claims of retaliation.  Doe claims three bases of retaliation against her:  gender stereotyping (under Title VII, the PHRA, and the BHRNDO), race (under 42 U.S.C § 1981), and disability (under the ADA).  Although, as with her other discrimination claims, the Court addresses the different bases for retaliation separately owing to their varying factual foundations, it is important to note that each claim is subject to the same analysis.  *See McCarty v. Marple Twp. Ambulance Corps*, 869 F. Supp. 2d 638, 643 (E.D. Pa. 2012) ("PHRA violations are subject to the same analysis as ADA and Title VII claims."); *see Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir. 1999) (analyzing retaliation claims under Title VII, § 1981, and the PHRA under the same framework).  Moreover, claims of retaliation at the burden of proof stage are analyzed under the same burden-shifting framework as other discrimination claims.  *See Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 447 (W.D. Pa. 2009); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  This means that the Court applies *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002) and its reasoning to Doe's allegations with respect to these claims at the pleading stage:  Doe need not plead all the elements of these claims to survive Triangle's motion to dismiss.

The first set of claims of retaliation the Court reviews are Doe's claims based on gender stereotyping brought pursuant to Title VII, the PHRA, and the BHRNDO.  The Court uses Title VII as the bases for its analysis.  The anti-retaliation provision of Title VII provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).  A prima facie claim of Title VII retaliation requires a plaintiff to plead

the following:  that "(1) she engaged in activity protected by Title VII; (2) the employer took an

adverse employment action against her; and (3) there was a causal connection between her

participation in the protected activity and the adverse employment action."  *Moore v. City of

Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.,* 51 F.3d 383,

386 (3d Cir.1995)), *as amended* (Sept. 13, 2006).  "With respect to 'protected activity,' the anti-

retaliation provision of Title VII protects those who participate in certain Title VII proceedings

(the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the

'opposition clause')."  *Moore*, 461 F.3d at 341 (quoting *Slagle v. County of Clarion,* 435 F.3d

262, 266 (3d Cir. 2006)).  With respect to the "adverse employment action," "[a] plaintiff

claiming retaliation under Title VII must show only that a reasonable employee would have

found the alleged retaliatory actions materially adverse in that they well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  *Artz v. Cont'l Cas.

Co.*, 720 F. Supp. 2d 706, 714 (E.D. Pa. 2010) (citing *Burlington Northern & Santa Fe Ry. v.

White,* 548 U.S. 53, 63 (2006)).

     Here, it is clear that Doe suffered adverse employment actions in the form of her

termination, as well as in her reassignment to duties beyond the view of Triangle's customers.

Doe appears to claim that the protected activity she was engaged in was her rebuffing customers

and coworkers who misgendered and harassed her, and complaining about this conduct to her

supervisors.  *See* Pl.'s Opp'n. at 29.  Doe's protected activity as pleaded is thus her opposition to

discrimination made unlawful by Title VII.  In such a situation, "the employee must hold an

*objectively reasonable* belief, in good faith, that the activity they oppose is unlawful under Title

VII."  *Moore*, 461 F.3d at 341 (emphasis added); *see Clark County v. Breeden,* 532 U.S. 268,

271 (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination).

Reading all of the allegations in the light most favorable to Doe, the Court finds that Doe has pleaded her engagement in a protected activity for purposes of Title VII:  In rebuffing customers and coworkers who misgendered her, and complaining to her supervisors about such treatment, she was opposing what in good faith she thought was unlawful under Title VII.[27]  *See Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535, 552 (W.D. Pa. 2009) ("Protected activity includes formal charges of discrimination as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." (quotation marks omitted)).  The Court moreover finds that in light of the totality of Doe's allegations, an inference of causation between the protected activity and Doe's reassignment and eventual termination can be drawn.[28]  Her claims of retaliation under Title VII, the PHRA, and the BHRNDO survive Triangle's motion to dismiss.

---

[27]    Additionally, it is possible Doe might be able to state her participation in a protected activity "[u]nder a 'perception theory' of retaliation," according to which "a defendant violates the anti-retaliation provision of Title VII if, believing that the plaintiff is engaged in a protected activity, it intentionally retaliates against the plaintiff because of its belief."  *Puidokas v. Rite-Aid of Pennsylvania, Inc.,* No. 3:09CV2147, 2010 WL 1903590, at *3 (M.D. Pa. May 10, 2010) (citing *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 571 (3d Cir. 2002)).

[28]    At a minimum, Doe has pleaded "enough facts to raise a reasonable expectation that discovery will reveal evidence of" causation.  *Connelly*, 809 F.3d at 789.

### H.    Retaliatory termination based on race in violation of 42 U.S.C § 1981 (claim XVIII)

As with her claims for hostile work environment and discrimination based on race under 42 U.S.C § 1981, even under the more deferential pleading standard applicable to discrimination claims Doe is similarly unable to state a claim for retaliatory termination based on race.[29]

While the prima facie elements of a § 1981 retaliation claim are the same as for Title VII (and ADA) retaliation claims, the "protected activity" element under a § 1981 claim corresponds to activity related to an underlying violation (or a good faith belief in an underlying violation) *of § 1981*. *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) ("'In a [§ 1981] retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation.' In doing so, the plaintiff 'must have acted under a good faith, reasonable belief that a violation existed.'" (quoting *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) and *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

To satisfy this standard, Doe would have to present some allegation that her, or another individual's rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" were not the same "as is enjoyed by white citizens," and that she took some action based upon this circumstance. 42 U.S.C. § 1981(a). However, no such allegation, or allegation from which the Court could draw such an inference, exists. As previously observed, Doe's substantive race-related allegations are limited to two comments from a coworker and a third ambiguous

---

[29]    In 2008, the Supreme Court affirmed that as with Title VII, 42 U.S.C § 1981's prohibitions included prohibition on race-based retaliation. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008) ("The question before us is whether § 1981 encompasses retaliation claims. We conclude that it does.").

comment that Doe does not attribute to a speaker. *See* Am. Compl. ¶¶ 15(b), 149-50.  These allegations fail to give rise to a plausible inference that Doe engaged in a protective activity related to her race — in particular, that she took action on behalf of herself or another on account of a perceived violation of § 1981.  Nor are there any allegations that Doe suffered an adverse employment action sharing a causal relationship with any such protected activity.

While she has failed to plead the elements of a race-based retaliation claim under § 1981, in the Court's view, Doe's allegations also fail under the more lenient pleading standard owed to discrimination and retaliation claims:  Doe has failed to state  "enough facts to raise a reasonable expectation that discovery will reveal evidence of" a protected activity or a resulting adverse employment action.  *Connelly*, 809 F.3d at 789.  As a result, this claim fails to survive Triangle's motion to dismiss.

## I.        Retaliatory termination based on disability in violation of the ADA (claim X)

In addressing Doe's claim of disability-based retaliation under the ADA, for purposes of Triangle's motion to dismiss the Court assumes, for the reasons described in detail above, and without prejudice to a later challenge, that Doe's (1) HIV-positive status and (2) gender dysphoria or transgender status, are bases to consider Doe "disabled" under the ADA.

As with a claim of retaliation under Title VII and § 1981, a prima facie claim of retaliation under the ADA requires allegations that (1) the plaintiff was engaged in a "protected activity," (2) the plaintiff was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.  *Monaco v. Limestone Veterinary Hosp.*, 152 F. Supp. 3d 253, 263 (D. Del. 2016).  "Protected activity" under the ADA "includes retaliation against an employee for requesting an accommodation."

*Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) (quoting *Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 188-89 (3d Cir. 2010)).

Doe has made out a claim of disability-based retaliation with respect to both her HIV-related disability and her transgender/gender dysphoria-disability.  According to the Amended Complaint, she requested reasonable accommodations for both disabilities.  With respect to her transgender-related disability, she sought to be treated consistent with her gender identity, to be referred to as female, and to be allowed to use the female restroom, which were denied.  *See* Am. Compl. ¶¶ 84-85, 90.  With respect to her HIV-related disability, Doe alleges that near the end of her employment she requested time off related to her HIV-positive diagnosis, however her request was denied and she ended up going into work while sick.  *Id*. ¶ 91.  Finally, the Court is satisfied that from Doe's allegations, a causal inference can be drawn between her request for and denial of reasonable accommodations, and her termination.[30]  This claim therefore survives Triangle's motion to dismiss.

### J.      Failure to accommodate (claims IX, XIV, and XV)

The final set of claims the Court addresses are Doe's claims against Triangle for its alleged failure to accommodate her disability and gender expression in violation of the ADA and the BHRNDO.  Because local and state employment discrimination law tracks federal employment discrimination law, the Court confines its failure to accommodate analysis to the ADA.  *See McCarty v. Marple Twp. Ambulance Corps*, 869 F. Supp. 2d 638, 643 (E.D. Pa. 2012).

---

[30]      At a minimum, Doe has pleaded "enough facts to raise a reasonable expectation that discovery will reveal evidence of" a causal connection.  *Connelly*, 809 F.3d at 789.

An employer violates the ADA when it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).[31]  To plead a prima facie claim of failure to accommodate, a plaintiff must allege that "(1) [s]he was disabled and h[er] employer knew it; (2) [s]he requested an accommodation or assistance; (3) h[er] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated."  *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)).  "Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  The applicable regulations further provide that

> [t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).

---

[31]   While the Court does not address this claim in terms of "discrimination," failing to "mak[e] reasonable accommodations" is statutorily defined as discriminatory conduct.  However, unlike other discrimination claims, "failure to accommodate claims 'do not require that an employer's action be motivated by a discriminatory animus directed at the disability and, therefore, the *McDonnell Douglas* [burden-shifting] test does not apply.'"  *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 595 (E.D. Pa. 2017) (quoting *Sharbaugh v. W. Haven Manor, LP*, No. CV 14-1723, 2016 WL 6834613, at *7 (W.D. Pa. Nov. 21, 2016)).

Doe has adequately pleaded claims of failure to accommodate based on disability.[32]  The

Court finds that, for reasons already discussed at length, Doe has pleaded the existence of two

disabilities and that Triangle was on notice of their existence.  Doe has moreover alleged that she

requested accommodations for these disabilities, that these requests were denied, and that

Triangle did not make a good-faith effort to accommodate her.  Finally, the Court is satisfied that

Doe has alleged that she could have been accommodated.

## V.    CONCLUSION

For the reasons discussed herein, Triangle's motion to dismiss is granted, in part, and

denied in part.  In particular, the motion is granted as to Doe's claims of race-based hostile work

environment, race-based discrimination, and race-based retaliation — claims XVI, XVII, and

XVIII of the Amended Complaint, respectively — and these claims are dismissed.  The motion

is denied as to the remainder of Doe's claims.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[32]    Because the Court has treated "disability" for purposes of this Opinion to encompass both
Doe's HIV-positive status and her transgenderism/gender dysphoria, the Court finds that success
on a failure to accommodate claim based on these disabilities also means she has adequately
pleaded a failure to accommodate claim based on "gender expression" as contained in claim
XIV.